GEORGE COX and ERICA KNOX,

    Plaintiffs,

    v.

JOHN GILLENWATER, et al.,

    Defendants.

No. 13 CV 4708

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiffs' two-count amended complaint alleges two deputy sheriffs violated the Fourth Amendment and Illinois law when, during an eviction, they allowed movers to open a locked storage unit and tow away a legally parked cargo van. Plaintiffs also seek to hold the Sheriff of DuPage County vicariously liable for the actions of these two deputies. Defendants have moved for summary judgment on both counts.

For the following reasons, defendants' motion is granted in-part and denied in-part.

**I.    Legal Standard**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## II. Background[1]

In June 2012, plaintiffs George Cox and Erica Knox learned they were being evicted from 162 Fairfield Lane in Carol Stream, Illinois. [49] ¶¶ 5-7. Neither plaintiff was present when the eviction began, but much of their property was. *Id.* ¶ 8; [53] ¶¶ 4-8. Plaintiffs left belongings in a locked PODS storage unit, which itself sat on the home's driveway. [53] ¶ 5; [49] ¶ 7. Plaintiffs also left some of their property inside a white cargo van that Cox had parked in the development's visitor parking area. [53] ¶ 7.[2]

Defendant John Gillenwater, a deputy with the DuPage County Sheriff's Office, arrived at the home around 11:30 am (the scheduled start time for the eviction). [49] ¶¶ 17-20. Gillenwater met a contractor and property manager named Michael Morawski who—with Michelle Whitehead and Marcus Luckey—the homeowner had hired to perform the eviction. *Id.* ¶¶ 20-21. According to plaintiffs' evidence, Gillenwater (incorrectly) told Morawski that the area in which the cargo van was parked was technically part of 162 Fairfield Lane and—for that reason—

---

[1] Defendants move to strike certain of plaintiffs' Local Rule 56.1 responses on the basis that plaintiffs improperly inserted facts that went beyond the scope of the underlying statement. Because I do not rely on any such outside-the-scope facts in resolving this motion for summary judgment, the motion to strike is denied as moot. Further, I will not accept defendants' statements as true, as they have asked me to, because plaintiffs properly set forth evidence putting them in dispute.

[2] Cox secured permission to park in the visitors' area from his next-door neighbor. [53] ¶ 7.

2

the vehicle could be towed as part of the eviction. [53] ¶ 11. Gillenwater also told Morawski that the latter's team could hold the van and its contents as collateral until plaintiffs paid off their debt. *Id*. Armed with this misinformation, Morawski proceeded to have the van towed. *Id*. ¶ 12. A record from West & Sons Towing shows the call came in at "11:40" and had an "ETA" of "1 hour." [49-4] at 2. Morawski later testified that he would not have towed the car had Gillenwater not given the go ahead. [53] ¶ 13.

Morawski also spoke with Gillenwater about what should be done with the PODS storage unit in the home's driveway. Gillenwater, who correctly believed the unit contained plaintiffs' property, said that it could be removed but that PODS should be called first to see if they'd come take it. *Id*. ¶¶ 19, 21-22; [49] ¶ 22. Whitehead called PODS and relayed to Gillenwater that a pickup was scheduled for that day. [53] ¶ 18. Nevertheless, Gillenwater told Luckey he could cut the lock on the unit, and he told Morawski that the unit's contents now belonged to the landlord. *Id*. ¶ 21. Luckey and Whitehead began removing plaintiffs' property from the locker. *Id*. ¶ 22.

Around 12:10 pm, defendant Filippo Restivo—another deputy with the DuPage County Sheriff's Office—arrived to relieve Gillenwater. [49] ¶ 33. Restivo observed plaintiffs' property being removed from the house and PODS unit. *Id*. ¶¶ 34-35. At some point, a driver from PODS came to the house to retrieve the unit, but Restivo did not permit him to take it while it still contained plaintiffs' property. *Id*. ¶ 36. When Restivo left the scene at 2:45 pm, everything that had been taken

3

from the PODS unit and residence had been placed on the front portion of the property. *Id*. ¶ 39.

Plaintiffs returned to 162 Fairfield Lane that evening to find the PODS storage unit in the same location as before, but with its padlock cut off, its door wide open, and its contents removed. [53] ¶ 24. Plaintiffs saw their personal property strewn across the driveway and yard. *Id*. ¶ 25. Cox also realized his cargo van was missing from the visitors' parking area, so he reported it stolen to the Carol Stream police. [49] ¶¶ 42-43. Cox eventually learned that the van had been towed, and when he went to retrieve it, he observed that its locks had been broken and that property was missing from inside. *Id*. ¶¶ 46-49. Altogether, plaintiffs allege that $42,000 worth of property went missing from the PODS unit and van. *Id*. ¶ 48-49.

Plaintiffs filed a two-count amended complaint seeking relief for these alleged injuries. Count I, which arises under 42 U.S.C. § 1983 and is brought against Gillenwater and Restivo, alleges violations of plaintiffs' fourth-amendment rights in connection with both the PODS storage unit and the cargo van. Count II, which plaintiffs bring against Gillenwater, seeks to hold the deputy liable under Illinois state law for the allegedly willful and wanton conduct described above. Plaintiffs also allege that defendant John Zaruba, the sheriff of DuPage County, is vicariously liable for the acts of his employees, Gillenwater and Restivo. Defendants have moved for summary judgment on both counts.

## III. Analysis

### A. Count I – Unreasonable Seizure

In Count I, plaintiffs claim defendants Gillenwater and Restivo violated their fourth-amendment rights by unreasonably seizing Cox's van and the contents of the PODS unit. Defendants assert qualified immunity as a defense to these claims. A law enforcement officer is entitled to qualified immunity if "a reasonable officer could have believed [his actions] to be lawful, in light of clearly established law and the information the . . . officer[ ] possessed." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Qualified immunity extends to government officials' objectively reasonable mistakes, "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). In order to defeat a properly raised qualified immunity defense, the plaintiff must establish two things: "first, that the facts alleged describe a violation of a protected right; and second, that this right was clearly established at the time of the defendant's alleged misconduct." *Mordi v. Zeigler*, 770 F.3d 1161, 1164 (7th Cir. 2014).

#### 1. PODS Unit

Qualified immunity protects Gillenwater and Restivo from liability for the seizure of the unit's contents because plaintiffs fail to demonstrate that the right at issue was clearly established at the time. As noted, it is plaintiffs' burden to defeat qualified immunity, so it is incumbent upon them to establish that the

5

constitutional right was clearly established by prior case law. *Humphries v. Milwaukee County*, 702 F.3d 1003, 1006 (7th Cir. 2012). To be clearly established, the right's contours must be "'sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, — U.S. —, 131 S.Ct. 2074, 2083 (2011) (quoting *Anderson*, 483 U.S. at 640). While a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*.

It is undisputed that defendants were executing a valid eviction order that called for the removal of plaintiffs' property from the premises of 162 Fairfield Lane. It is not genuinely disputed, furthermore, that plaintiffs' property was still on the premises of 162 Fairfield Lane at the time of the eviction—albeit inside a large container. Although plaintiffs argue without citation to the record that "plaintiffs had already removed their property from the premises," [51] at 11, this assertion is belied by, among other things, photographs clearly depicting the PODS unit still on the home's driveway. To be sure, plaintiffs' property was no longer inside the house, but nothing in the record suggests the eviction order did not cover the driveway, or that plaintiffs otherwise had a continued right to possess the driveway.

It is presumptively reasonable under the Fourth Amendment for law enforcement to remove property pursuant to a valid and applicable order of eviction. *See Soldal v. Cook County, Illinois*, 506 U.S. 56, 71 (1992); *see also* [51] at 11 ("And of course it is reasonable to remove the occupants' property from the premises during an eviction—that is what is called for by the order of eviction."). Plaintiffs

provide no authority clearly establishing that the opposite is true when such property is locked inside a giant box, which is itself situated on the subject real property.

Plaintiffs argue that at the very least, Restivo should have allowed the PODS driver to collect the storage unit and its remaining contents, and that his failure to do so was unreasonable under the Fourth Amendment. Once again, though, plaintiffs fail to present any authority clearly establishing that this course of conduct was unconstitutional.

Plaintiffs rely on *Rubin v. City National Bank and Trust Co.*, 81 Ill. App. 3d 1020 (2d Dist. 1980) for the proposition that "in the case of an eviction, title to the occupant's personal property remains with the occupant who has the right to retrieve it during the eviction." [51] at 9. Plaintiffs also note that under the General Order of the DuPage County Sheriff's Office, "the person being evicted, or his agent, has the right to retrieve his personal property from the scene during the eviction." Neither source clearly establishes, however, that law enforcement officers violate the Fourth Amendment when they remove property from a residence pursuant to a valid eviction order, and then see the job through to completion.

The record contains some evidence that either Gillenwater or Restivo told Morawski that his team or the homeowner could take custody of the property in the PODS unit until plaintiffs paid their debt. *See, e.g.*, [53] ¶ 21. There is no evidence in the record, however, that as a result of this mistaken legal instruction, the homeowner, Morawski, Whitehead, or Luckey actually took anything from the

PODS unit and kept it. To the contrary, the evidence is that Whitehead and Luckey removed property from the PODS unit, placed it on the front lawn, and that no one from that team retained anything. [48-6] at 77, 81, 119. Therefore, even assuming that defendants actually supplied this misinformation, it cannot support a fourth-amendment claim because there is no evidence of an injury actually caused by a constitutional violation. *See Berman v. Young*, 291 F.3d 976, 982 (7th Cir. 2002).

On Count I, defendants' motion is granted as relates to the PODS unit.

### 2. Cargo Van[3]

Qualified immunity does not protect Gillenwater from liability for the seizure of plaintiffs' van, and, for similar reasons, summary judgment is not appropriate. Plaintiffs have set forth evidence demonstrating that their protected rights were violated. The Fourth Amendment, made applicable to the states by the Fourteenth Amendment, protects a person's property from being unreasonably seized by law enforcement. *See Soldal*, 506 U.S. at 72. It is unreasonable under the Fourth Amendment for law enforcement to seize a person's personal property unless accomplished (1) "pursuant to a judicial warrant," or (2) by means of an exception to the warrant requirement. *See Illinois v. McArthur*, 531 U.S. 326, 330 (2001). In this case, no warrant was obtained for the van. Nor does the record contain evidence that any exception to the warrant requirement, such as the automobile exception, applied to the van. And although the eviction order provided fourth-amendment cover as to the personal property located at 162 Fairfield Lane, the order was

---

[3] Plaintiffs' brief clarifies that they do not claim Restivo unreasonably seized their van. *See* [51] at 10. Summary judgment is therefore granted as to Restivo on that aspect of Count I.

limited to that premises and could not have been reasonably interpreted as extending to vehicles in the visitors parking area. *See Hansen v. Cannon*, 122 Fed. App'x 265, 271-72 (7th Cir. 2004) (vacating grant of summary judgment to defendant police chief who was involved in eviction of lot that was adjacent to, but clearly distinct from, lot subject to eviction order, even though it was believed that both lots were owned by same family).

It was also clearly established in June 2012 that it is unreasonable for law enforcement to seize property without a warrant or other legal basis. *McCarthur*, 531 U.S. at 330; *Soldal*, 506 U.S. at 72; *Hansen*, 122 Fed. App'x at 271 ("Of course, as we said in the Hansens' previous appeal, seizing property without a court order is a presumptive violation of the Fourth Amendment that was clearly established [in 1997].").

Finally, Gillenwater was sufficiently involved in the van's seizure for the incident to deemed state action. "[T]o be liable under § 1983, the individual defendant must have 'caused or participated in a constitutional deprivation.'" *Pepper v. Village of Oak Park*¸ 430 F.3d 805, 810 (7th Cir. 2005) (quoting *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994)). An official satisfies this personal responsibility requirement "if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (quotation omitted). "That is, he must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye . . . ." *Id.* (quotation omitted). Here, Morawski testified that "the sheriff" told him that (1) the

9

cargo van—although located in the visitor parking area—was technically on the homeowner's property, (2) Morawski could retain the van and its contents until plaintiffs paid their debt, and (3) Morawski could have the van towed as part of the eviction. Morawski also testified that he would not have towed the van if the sheriff had not given him permission.

Defendants argue that because Morawski failed to identify this "sheriff" by name, his testimony cannot support the conclusion that the person in question was Gillenwater. Gillenwater testified, however, that he had a discussion about what to do with the van with a white man hired by the homeowner. [48-4] at 26-29. Of the three people hired by the homeowner, only Morawski was white. This is sufficient to create a genuine issue as to the material fact of Gillenwater's involvement in the van seizure.[4]

Accordingly, there is sufficient evidence to conclude that Gillenwater participated in the alleged constitutional deprivation by knowingly approving of and condoning the van's seizure. On Count I, defendants' motion is denied as to the seizure of the van.

B. **Count II - Willful and Wanton Conduct**

1. **Gillenwater**[5]

In Illinois, "[a] public employee is not liable for his act or omission in the

---

[4] The inference that Gillenwater was the "sheriff" referenced by Morawski is further supported by Restivo's testimony that he never saw any white van. [48-5] at 92.

[5] Although the parties discuss whether or not Restivo engaged in willful and wanton conduct, the amended complaint makes plain that Count II "is not brought against Filippo Restivo." [33] at 10.

10

execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202. "Willful and wanton conduct" is defined as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210.

Defendants argue that summary judgment should be granted as to Gillenwater on Count II because the record contains no evidence that his conduct rose to the level of willful and wanton conduct. Plaintiffs respond that Gillenwater acted willfully and wantonly "by preventing plaintiffs' agent from retrieving the plaintiffs' personal property locked in the PODS storage unit, by allowing the lock to be cut, . . . by directing the plaintiffs' personal property to be placed outside the storage unit . . . [and by] permitting the towing of a legally parked van which was not on the site of the eviction." [51] at 14-15.

In light of the eviction order and for the same reasons summary judgment in favor of Gillenwater was appropriate in part with respect to Count I, the record contains insufficient evidence that Gillenwater's PODS-related conduct was willful and wanton. It also bears mentioning that the record contains no evidence that Restivo prevented the PODS driver from taking the unit with the actual or deliberate intention of causing harm, or with utter indifference to or conscious disregard for the safety of plaintiffs' property. Although he did not specifically remember his conversation with the PODS driver, Restivo testified that he probably prevented the pickup in order to make the remaining contents available to plaintiffs

11

on the front yard. [48-5] at 46. Plaintiffs present no contrary evidence relating to Restivo's mental state, other than the mere fact that he prevented the pickup. In any event, Restivo is not named in Count II and, as discussed below, cannot serve as a basis for vicarious liability.

However, as discussed above, the evidence sufficiently supports the finding that Gillenwater was utterly indifferent to the safety of plaintiffs' van and its contents. There is evidence that Gillenwater intentionally advised Morawski to take the van, and knew that there was no warrant or other lawful basis for the seizure.

Accordingly, on Count II, Gillenwater's motion is granted as to the PODS unit and denied as to the cargo van.

### 2. Zaruba

In Count II, plaintiffs also claim Zaruba is vicariously liable for the conduct of Gillenwater and Restivo. The Seventh Circuit has held, however, that a sheriff is "immune [from vicarious liability] under the provisions of the Illinois Tort Immunity Act." *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1044 (7th Cir. 1998) (citing 745 ILCS 10/2-204 ("Except as otherwise provided by statute, a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person.")).

Plaintiffs cite district court decisions in which courts held that sheriffs in Zaruba's position are not immune from vicarious liability. *See Jacoby v. DuPage County*, 2013 WL 3233339 (N.D. Ill. June 26, 2013); *Davis v. Peoria County*, 2009 WL 3258318 (C.D. Ill. Oct. 8, 2009). *Payne*, however, remains binding precedent,

and its reading of the Illinois Tort Immunity Act is straightforward. The sheriff is not liable for an injury caused by another person. This is not inconsistent with 745 ILCS 10/9-102, which provides for indemnification by a local public entity for tort judgments against an employee acting within the scope of his employment. Vicarious liability and indemnification are different, and nothing in this opinion precludes indemnification pursuant to Illinois law.

On Count II, defendants' motion is granted as to Zaruba.

## IV. Conclusion

Defendants' motion for summary judgment [46] is granted in-part and denied in-part. The Clerk shall terminate defendants Restivo and Zaruba as parties to this case, and plaintiffs' claims against defendant Gillenwater as to the seizure of the van remain pending.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 4/6/15